# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMES P. SIEMONSMA AND EDWARD J. MEEKINS JR., <br><br> Plaintiffs, <br><br> v. <br><br> HONKAMP KRUEGER FINANCIAL SERVICES, INC., <br><br> Defendant. | CASE NO. _____ <br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiffs James P. Siemonsma ("Siemonsma") and Edward J. Meekins Jr. ("Meekins") (hereinafter collectively referred to as "Plaintiffs," unless otherwise referred to individually), in support of their claims against Defendant Honkamp Krueger Financial Services, Inc. ("HKFS"), state as follows.

## PRELIMINARY STATEMENT

1. In this action for declaratory relief, Siemonsma and Meekins seek declarations from the Court regarding various restrictive covenants contained in agreements Siemonsma and Meekins signed with HKFS, that are overbroad and unenforceable. As set forth below, these agreements purport to restrict the post-employment rights and opportunities of Siemonsma and Meekins, and facially violate well-settled Nebraska law. Accordingly, declaratory relief is both proper and ripe for adjudication.

## JURISDICTION & VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

4.     Siemonsma is a citizen of Nebraska and resides at 7751 Loess Lane, Fort Calhoun, Nebraska 68023. Siemonsma was employed by HKFS in Nebraska as the Vice President, National Accounts and performed financial planning services out of HKFS's Omaha office at 220 North 89th Street, Suite 202, Omaha, Nebraska, 68114.

5.     Meekins is a citizen of Nebraska and resides at 19319 Williams Street, Omaha, Nebraska, 68130. Meekins was employed by HKFS in Nebraska as a Financial Advisor and performed financial planning services out of HKFS's Omaha office at 220 North 89th Street, Suite 202, Omaha, Nebraska, 68114.

6.     HKFS is an Iowa corporation with its principal place of business in Dubuque, Iowa. HKFS's registered office address is 3390 Asbury Road, Dubuque, Iowa, 52002. HKFS has offices in Omaha, Nebraska and transacts business in the state of Nebraska. HKFS provides financial advisory and planning services.

## BACKGROUND FACTS

**Siemonsma's Employment and Stock Restriction Agreements**

7.     Siemonsma began employment with HKFS on or about May 3, 1999. Two agreements are at issue with respect to Siemonsma's employment.

8.     The first agreement is an Employment Agreement, which Siemonsma signed with HKFS on or about May 3, 1999. A true and accurate copy of the Employment Agreement is attached hereto as Exhibit "A," and incorporated herein with this reference.

9.     Siemonsma's Employment Agreement included a "Covenant Not To Solicit" in Section 9, which provides as follows:

2

"**9. Negative Covenants.**

**a. Covenant Not To Solicit.** Employee acknowledges that, if Employee, upon termination of employment, was to solicit and/or accept Business from Company's clients or prospective clients, it would cause serious harm to Employer. Therefore, if this Employment Agreement is terminated by either party for any reason, Employee agrees not to solicit Business, nor to assist any other person in the solicitation of Business, from any Company client or prospective client, directly or indirectly, for a period of three years from and after the date of termination of employment. Furthermore, during the same three year period after termination of employment, Employee will not accept any Business from any of Company's clients or prospective clients.

For purposes of this Section 9, "Client" includes any person, including but not limited to, an individual, corporation, partnership or other entity with whom the Company or any of the Company's soliciting agents or employees have done business within one year prior to Employee's termination. For purposes of this Section 9 "Prospective Client" includes any person including, but not limited to, an individual, corporation, partnership or other entity from whom the company or any of its soliciting agents or employees have solicited Business within the six months preceding the Employee's termination whether such solicitation was in person, by telephonic means, written correspondence or otherwise."

10. Siemonsma's Employment Agreement also included a "Covenant Not To Compete," contained in Section 9, which provides as follows:

"**9. Negative Covenants.**

\*\*\*\*

**b. Covenant Not To Compete.** Employee further covenants that for a period of one year following the termination of Employee's employment for whatever reason, Employee will not, within the Company's market area, directly or indirectly, either as a sole proprietor, partner, stockholder, director, officer, employee, consultant or in any other capacity, conduct or engage in, or be interested in or associated with, any person or entity which engages in the Business (as defined above). For purposes of this Paragraph, the "Company's market area" includes, but is not limited to, the States of Illinois, Indiana and Wisconsin."

11. Section 13 of Siemonsma's Employment Agreement provides that the Employment Agreement "shall be governed by the law of the State of Iowa."

12. Upon information and belief, the second agreement Siemonsma executed was a Second Amended and Restated Honkamp Krueger Financial Services, Inc. Stock Restriction and Cross Purchase Agreement (the "Stock Restriction Agreement"). A true and accurate copy of the Stock Restriction Agreement Siemonsma is believed to have executed is attached hereto as Exhibit "B," and incorporated herein with this reference.

13. By virtue of Siemonsma's status as an employee of HKFS, Siemonsma received a benefit from HKFS of a 2.5% interest in shares of HKFS. Thirty-six other individuals also received interests in the shares of HKFS.

14. Section 4 of the Stock Restriction Agreement provides for the disposition of such interests upon an employee's termination of employment with HKFS.

15. Under Section 4, upon termination, HKFS has an irrevocable option to purchase any or all Shares of HKFS owned by Siemonsma immediately prior to his termination of employment. If HKFS does not exercise its option, the remaining Shareholders must purchase Siemonsma's Shares.

16. As set forth in Exhibit B, formulas for the purchase of Siemonsma's Shares of HKFS, require payment of installments with a ten percent down payment due upon termination of Siemonsma's employment.

17. Siemonsma's Stock Restriction Agreement also contains a "Covenant Not To Solicit Or Accept Business From Company's Clients," which provides as follows:

> "16. Covenant Not To Solicit Or Accept Business From Company's Clients. Each Shareholder acknowledges that it would cause serious harm to the Company if any Shareholder were to solicit Business from the Company's clients. Therefore, each party to this Agreement agrees that they will not, directly or indirectly, solicit, or assist any other person in the solicitation of Business from any of the Company's clients for a period of two years from and after the date that the party ceases to be a Shareholder. Furthermore, during the same two year period after a party ceases to be a Shareholder, such person will not, directly or

4

indirectly, accept any Business from any of the Company's clients. For purposes of this section the following definitions shall apply:

(a) 'Solicit' or 'solicitation' includes but is not limited to the contacting of customers in person, by telephone or mail, or any other means of communication, with the objective of acquiring business from them or with the purpose of informing the customer of the former shareholder's new place of employment and/or place of business.

(b) 'Business' or 'Company's Business' includes both the Company's professional financial service business and the Company's retail financial service business. The Company's professional financial service business, as used herein, is the business of consulting with certified public accounting firms and other financial service providers to assist such firms in the offering of financial services (such as securities brokerage, insurance brokerage and investment advice and management) to their retail clients. The professional service business includes, but is not limited to, (i) marketing such products to certified public accounting firms and other financial service providers; (ii) providing assistance in establishing marketing plans and the offering of services to the clients of the firms; (iii) providing the systems necessary for such firms to provide such financial services to their clients; and (iv) all matters necessary or incidental thereto. The Company's retail financial service business, as used herein, includes securities brokerage, insurance brokerage and investment advice and management.

(c) 'Directly or indirectly' includes but is not limited to soliciting or accepting business for or on behalf of the former shareholder, individually, or for or on behalf of any entity (i) by which the former shareholder is employed (ii) for which the former shareholder is a consultant, agent or independent contractor or (iii) in which the former shareholder owns any interest as a shareholder, partner, member or in any other capacity."

18. The Stock Restriction Agreement provides further in Section 17.09 that it "shall be subject to and governed by the laws of the State of Iowa."

**Meekins' Employment Agreement**

19. Meekins began employment with HKFS on or about August 12, 2013. There is only one agreement at issue with respect to Meekins' employment.

20. On or about August 12, 2013, Meekins signed an "Agreement Ancillary to Employment," (the "Meekins Agreement"). A true and accurate copy of the Meekins Agreement is attached hereto as Exhibit "C." Upon information and belief, despite the Meekins

5

Agreement's original title and reference to an "Employment Agreement," the only agreement Meekins signed was the Meekins Agreement. There are no other agreements to which Meekins is a party with respect to his employment at HKFS.

21. Section 2 of the Meekins Agreement contains certain restrictive "Anti-Piracy Covenants," which provide as follows:

> "2. <u>Anti-Piracy Covenants</u>. Employee acknowledges that the services he/she is to render pursuant to this Agreement are of a special character with a unique value to Employer, the loss of which cannot adequately be compensated by damages in an action at law. In view of the unique value to Employer of the services of Employee for which Employer has contracted hereunder and because of the confidential information to be obtained by or disclosed to Employee, Employee covenants and agrees as follows:
>
>> a. During Employee's employment and for a period of three years after he/she ceases to be employed by Employer, Employee shall not, directly or indirectly, solicit or divert business from, accept business from, provide, or attempt to convert to other methods of using, the same or similar products or services provided by Employer either before or after the date hereof by Employer, including clients with respect to whom Employee performed professional services prior to his/her employment with Employer. For purposes of this section, any client or account of Employer includes, but is not limited to, any person or entity to whom Employer provided service(s) within the twenty-four (24) month period prior to Employee's employment termination.
>
>> b. During Employee's employment and for a period of three year after he/she ceases to be employed by Employer, Employee shall not, directly or indirectly, solicit for employment, accept employment of, or employ any employee of Employer. For purposes of this section, any Employee of Employer includes, but is not limited to, any person employed by Employer within the twelve (12) month period prior to Employee's employment termination."

22. Section 9 of the Meekins Agreement provides that the "Agreement shall at all times and in all respects be governed by the laws of the state of Iowa."

**Meekins and Siemonsma's Employment with HKFS Ends**

23. On Friday, September 29, 2017, Meekins resigned his employment with HKFS.

24. Subsequent to resigning his employment with HKFS, Meekins became employed with Mariner Wealth Advisors Omaha, LLC.

25. On Friday, September 29, 2017, Siemonsma resigned his employment with HKFS.

26. Subsequent to his resignation from HKFS, Siemonsma became employed with Mariner Wealth Advisors Omaha, LLC.

27. Like HKFS, Mariner provides financial advisory and planning services.

28. HKFS has a history of seeking to enforce agreements that contain restrictive covenants similar to those contained in the Siemonsma and Meekins agreements discussed herein.

29. Because HKFS and Mariner both provide financial advisory and planning services, Siemonsma's and Meekins' new employment at Mariner creates an immediate and significant dispute between them and HKFS with regard to the enforceability of the agreements described herein, and the nature and scope of services Siemonsma and Meekins may provide as employees of Mariner, the value of which for each exceeds $75,000.00.

30. Absent the relief sought, and declarations as to the rights, status, and validity of the restrictive covenants in Siemonsma's Employment Agreement and Stock Restriction Agreement, and those contained in the Meekins Agreement, the legal relations of the parties will remain uncertain.

7

**CLAIM FOR DECLARATORY RELIEF**

31. Siemonsma and Meekins incorporate the foregoing paragraphs as if fully set forth.

32. An actual controversy of justiciable nature exists between the Plaintiffs and HKFS for which the Plaintiffs have no adequate remedy at law involving their respective rights and obligations upon the termination of their employment.

33. Siemonsma's Employment Agreement and Stock Restriction Agreement, and the Meekins Agreement (collectively referred to below as the "Agreements" unless otherwise referred to individually), present a present and justiciable controversy that may be determined by a judgment declaring the rights and obligations of the parties under the Agreements.

34. The restrictive covenants in the Agreements are not enforceable under Nebraska law.

35. Nebraska has a substantial relationship to the parties because Meekins' and Siemonsma's services on behalf of HKFS were performed in Nebraska, both reside in Nebraska, and the purported prohibitions of the nonsolicitation and noncompetition provisions directly and materially affect Meekins' and Siemonsma's employment in Nebraska.

36. Nebraska possesses a direct and substantial interest in the employment of Meekins and Siemonsma, and in the adjudication of the rights and obligations of the parties under the Agreements for the following reasons:

    a. The "Covenant Not To Solicit" provision in Section 9 of Siemonsma's Employment Agreement purports to prohibit Siemonsma from accepting "any Business" from any of HKFS's clients or prospective clients without regard to whether Siemonsma actually did business with or had personal contact with those clients. That restriction, as a matter of

8

law, is greater than reasonably necessary to protect HKFS's interests and is thus void as against the public policy of Nebraska and unenforceable under Nebraska law.

        b.      The "Covenant Not to Compete" provision in Section 9 of Siemonsma's Employment Agreement purports to prohibit Siemonsma from competing with HKFS within HKFS's "market area," which is an unreasonable restraint of trade and an unreasonable restriction of Siemonsma's right to be employed by a business and earn a living. That restriction, as a matter of law, is void as against public policy of Nebraska and unenforceable under Nebraska law.

        c.      The "Covenant Not To Solicit Or Accept Business From Company's Clients" provision in Section 16 of Siemonsma's Stock Restriction Agreement purports to prohibit Siemonsma from soliciting or accepting business from HKFS's clients without regard to whether Siemonsma actually did business with or had personal contact with those clients. That restriction, as a matter of law, is greater than reasonably necessary to protect HKFS's interests and is thus void as against the public policy of Nebraska and unenforceable under Nebraska law.

        d.      The "Anti-Piracy Covenants" in Section 2 of the Meekins Agreement purports to prohibit Meekins from soliciting or accepting business from any person or entity that HKFS provided services to in the two years preceding Meekins' termination, without regard to whether Meekins actually did business with or had personal contact with such persons or entities, and further includes clients to whom Meekins provided services prior to his employment with HKFS. Those restrictions are greater than reasonably necessary to protect HKFS's interests and are thus void as against the public policy of Nebraska and unenforceable under Nebraska law.

37. There is a presently existing controversy between the Plaintiffs and HKFS concerning the Plaintiffs' rights and obligations under the Agreements and their ability to perform work for another employer in Nebraska.

WHEREFORE, Plaintiffs, James P. Siemonsma and Edward J. Meekins Jr., request that the Court enter a judgment declaring the rights and obligations of the parties with respect to the aforementioned covenants contained in Plaintiffs respective Agreements as follows:

  a. Declare Nebraska law governs the enforceability of the restrictive covenants contained in the Agreements;

  b. Declare that the restrictive covenants in the Agreements are void as against the public policy of Nebraska and unenforceable under Nebraska law;

  c. Declare that HKFS owes Siemonsma the value of his Shares as provided for in the the Stock Restriction Agreement;

  d. Award Plaintiffs' their costs and fees as allowed by law;

  e. Award injunctive relief to the extent necessary to prevent HKFS from circumventing this Court's jurisdiction; and

  f. Award such other and further equitable relief as the Court deems be just and proper.

## JURY DEMAND

Plaintiffs demand a jury on all issues so triable in Omaha, Nebraska.

DATED this 29th day of September, 2017.

        JAMES P. SIEMONSMA AND EDWARD J. MEEKINS JR., Plaintiffs,

        By: */s/ David A. Yudelson*
           Margaret C. Hershiser, #19545
           David A. Yudelson, #23257
           Koley Jessen P.C., L.L.O.
           One Pacific Place, Suite 800
           1125 South 103rd Street
           Omaha, NE 68124-1079
           (402) 390-9500
           (402) 390-9005 (facsimile)
           Margaret.Hershiser@koleyjessen.com
           David.Yudelson@koleyjessen.com

           Attorneys for Plaintiffs